IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

LISA HAUGEEN,

      Plaintiff,

v.

DEL TACO RESTAURANTS, INC.,
LAWRENCE F. LEVY,
EILEEN APTMAN,
JOHN D. CAPPASOLA, JR.,
VALERIE L. INSIGNARES,
ARI B. LEVY,
KAREN LUEY,
R.J. MELMAN, and
JOSEPH STEIN,

      Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**

---

Plaintiff Lisa Haugeen ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's

complaint against Defendants (defined below), alleges the following based upon personal

knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other

matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.       This is an action against Del Taco Restaurants, Inc. ("Del Taco" or the "Company")

and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9,

in connection with the proposed acquisition (the "Proposed Transaction") of Del Taco by Jack in the Box Inc. ("Jack in the Box") and its wholly owned subsidiary, Epic Merger Sub Inc. ("Merger Sub").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company has locations in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Del Taco common stock.

7.      Defendant Del Taco develops, franchises, owns, and operates Del Taco quick-service Mexican-American restaurants in the United States. Del Taco's restaurants offer Mexican inspired and American classic dishes. As of August 31, 2021, it operated approximately 600 restaurants across 16 states, including various in Colorado. The Company's common stock trades on the Nasdaq under the ticker symbol, "TACO."

8.     Defendant Lawrence F. Levy ("L. Levy") is Chairman of the Board of the Company.

9.     Defendant Eileen Aptman ("Aptman") is a director of the Company.

10.    Defendant John D. Cappasola, Jr. ("Cappasola") is President, Chief Executive Officer ("CEO"), and a director of the Company.

11.    Defendant Valerie L. Insignares ("Insignares") is a director of the Company.

12.    Defendant Ari B. Levy ("A. Levy") is a director of the Company.

13.    Defendant Karen Luey ("Luey") is a director of the Company.

14.    Defendant R.J. Melman ("Melman") is a director of the Company.

15.    Defendant Joseph Stein ("Stein") is a director of the Company.

16.    Defendants L. Levy, Aptman, Cappasola, Insignares, A. Levy, Luey, Melman, and Stein are collectively referred to herein as the "Individual Defendants."

17.    Defendants Del Taco and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

18.    On December 6, 2021, Del Taco and Jack in the Box announced the Proposed Transaction, pursuant to which Jack in the Box would acquire Del Taco for $12.51 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Jack in the Box to Acquire Del Taco, Combining Two Challenger Brands to Create Substantial Opportunities for Growth and Increased Profitability**

December 06, 2021 07:30 AM Eastern Standard Time

SAN DIEGO & LAKE FOREST, Calif.--(BUSINESS WIRE)--Jack in the Box Inc. (NASDAQ: JACK), one of the nation's leading QSR chains, and Del Taco Restaurants, Inc. (NASDAQ: TACO), the nation's second largest Mexican QSR

3

chain by number of restaurants, today announced that the companies have entered into a definitive agreement pursuant to which Jack in the Box will acquire Del Taco for $12.51 per share in cash in a transaction valued at approximately $575 million, including existing debt. While this price per share offers an attractive premium to Del Taco shareholders, Jack in the Box estimates that the transaction values Del Taco at a synergy adjusted multiple of approximately 7.6x trailing twelve months Adjusted EBITDA.

Founded in 1964, Del Taco serves more than three million guests each week at its approximately 600 restaurants across 16 states. 99% of Del Taco restaurants feature a drive-thru, helping to achieve strong off-premise sales and a diversified daypart mix. Jack in the Box and Del Taco will have more than 2,800 restaurants spanning 25 states with similar guest profiles, menu offerings and company cultures – both priding themselves on serving guests with unique variety, quality, innovation and value. Together, the companies will create a stronger QSR player with greater scale and the ability to enhance the guest experience while pursuing profitable growth.

"We are thrilled to welcome Del Taco, a beloved brand and proven regional winner, to the Jack in the Box family," said Darin Harris, CEO of Jack in the Box. "This is a natural combination of two like-minded, challenger brands with outstanding growth opportunities. Together, Jack in the Box and Del Taco will benefit from a stronger financial model, gaining greater scale to invest in digital and technology capabilities, and unit growth for both brands. This acquisition fits squarely in our strategic pillars and helps us create new opportunities for the franchisees, team members and guests of both brands."

Mr. Harris continued, "Del Taco has a loyal, passionate guest base and a strong operating model, and we believe that we can leverage our infrastructure, experience refranchising, and development strategy to support Del Taco's growth plans and expand Del Taco's footprint. We can't wait to welcome the Del Taco team members and franchisees to the Jack family!"

David Beshay, a Jack in the Box franchisee and operator of 210+ restaurants, added, "I couldn't be happier about the opportunity that this transaction offers to the franchisees of these two amazing brands. I believe the Del Taco brand will fit hand in glove with ours, and further enhance the strong franchise and guest-focused culture we have worked so hard to develop at Jack in the Box. We are excited about the potential to open Del Taco restaurants, helping the company expand these two beloved brands."

John D. Cappasola, Jr., President and CEO of Del Taco, said, "We are excited to have found a partner in Jack in the Box that shares our vision for the future and has the QSR expertise to further accelerate Del Taco's growth. In recent years, we have uniquely positioned Del Taco as a leader in the growing Mexican QSR category, expanded our digital capabilities to enhance consumer convenience and focused on

growing the brand through franchising, resulting in eight consecutive years of franchise same store sales growth and an accelerating new unit pipeline."

Mr. Cappasola, Jr. continued, "We expect this transaction will provide Del Taco with the scale, complementary capabilities and opportunity to become even stronger partners to our franchisees and support their ability to drive substantial growth in our core and emerging markets. On behalf of Del Taco Restaurants, Inc. Board of Directors, we're confident the agreement delivers immediate value to Del Taco shareholders and will greatly benefit our brand, team members, franchisees and loyal guests for many years to come."

Brent Veach, a Del Taco franchisee and operator of 50+ restaurants, shared, "Del Taco and Jack in the Box are two iconic brands that both represent a tremendous business opportunity for existing and new franchisees. I am excited how this new larger organization can provide operating cost synergies and further accelerate franchise growth through enhanced support, additional resources and shared real estate knowledge. We are excited to join the Jack in the Box family and assist in growing both amazing brands."

**Compelling Strategic and Financial Benefits**

The transaction is expected to:

- **Deliver Immediate Earnings Accretion with Significant Upside.** Jack in the Box expects the transaction to be mid-single-digit accretive to earnings per share excluding transaction expenses in year one and meaningfully accretive beginning in year two once full synergizes are realized.

- **Create a Stronger QSR Player with Enhanced Scale.** This transaction combines two challenger brands with complementary geographic footprints, guest profiles and menu offerings to create a scaled QSR player with a stronger financial model to drive growth and enhanced profitability. Jack in the Box and Del Taco will also benefit from sharing best practices and the opportunity to strengthen guest loyalty and reach new guests. As a combined QSR player, Jack in the Box and Del Taco plan to expand their footprint and continue to drive innovation at both brands to create more unique, innovative menus and exceptional guest experiences.

- **True QSR in the Expanding Mexican Category with a Track Record of Consistent Growth.** The transaction allows Jack in the Box to tap into the growing and attractive Mexican QSR category, where Del Taco has been a leading brand with a track record of consistent performance. By leveraging the combined scale of the companies, we will be able to effectively target secular demographic trends underpinning the category.

- **Reinforce Unit Growth Plans for Both Brands.** By leveraging Jack in the Box and Del Taco's unique strengths and their shared approach to building out markets, Jack in the Box will be able to support growth plans for both brands. Jack in the Box will benefit from Del Taco's strong operations, construction, and development expertise to drive more efficient expansion supporting its long-term objective of 4% annual unit growth by 2025. By leveraging Jack in the Box's broader footprint, re-franchising experience, and digital capabilities, the combined company expects to drive energized growth at both brands in existing and new markets.

- **Create Substantial Opportunities for Franchisee Expansion and Unit Level Economics.** The transaction brings together two exceptional franchisee bases and creates an enhanced platform for franchisee expansion and growth by leveraging the combined company's scale, technology and digital capabilities. Both brands' franchisees will benefit from economies of scale in supply chain and more diverse opportunities to expand their businesses and drive enhanced profitability. The transaction will enable both brands to provide stronger support to franchisees with a broader set of resources to help them optimize and grow their businesses.

- **Build a Stronger, More Flexible Financial Model.** The transaction will create a stronger combined organization, with increased size and scale, and the financial resources to pursue a wider set of opportunities for profitable growth. Jack in the Box expects that the combined organization will also benefit from a more efficient capital structure. Jack in the Box expects to maintain a leverage ratio within its target range of 4.0x to 5.5x total debt to Adjusted EBITDA and an investment grade credit rating.

- **Drive Meaningful Synergies.** Jack in the Box expects the combined company to realize run-rate strategic and cost synergies of approximately $15 million by the end of fiscal year 2023, with approximately half of the synergies achieved in the first year. Jack in the Box expects to achieve these synergies largely through procurement and supply chain savings, technology and digital efficiencies and other financial benefits, as well as knowledge-sharing initiatives.

**Financing and Path to Completion**

Jack in the Box intends to finance the acquisition through the issuance of additional securitization notes from its existing program with a financing commitment provided by BofA Securities, Inc.

The transaction is expected to close in the first calendar quarter of 2022 and is subject to customary closing conditions, including receipt of Del Taco shareholder approval and regulatory approvals.

**Advisors**

BofA Securities is serving as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal advisor to Jack in the Box. Piper Sandler & Co. is serving as exclusive financial advisor and McDermott Will & Emery LLP is serving as legal advisor to Del Taco.

*       *       *

**About Jack in the Box Inc.**

Jack in the Box Inc. (NASDAQ: JACK), based in San Diego, is a restaurant company that operates and franchises Jack in the Box® restaurants, one of the nation's largest hamburger chains, with more than 2,200 restaurants in 21 states and Guam. For more information on franchising opportunities with Jack in the Box, visit JackintheBoxFranchising.com.

**About Del Taco Restaurants, Inc.**

Del Taco (NASDAQ: TACO) offers a unique variety of both Mexican and American favorites such as burritos and fries, prepared fresh in every restaurant's working kitchen with the value and convenience of a drive-thru. Del Taco's menu items taste better because they are made with quality ingredients like freshly grilled chicken and carne asada steak, fresh house-made guacamole, freshly grated cheddar cheese, slow-cooked beans made from scratch, and creamy Queso Blanco.

Founded in 1964, today Del Taco serves more than three million guests each week at its approximately 600 restaurants across 16 states. Del Taco's commitment to providing guests with the best quality and value for their money originates from cooking, chopping, shredding, and grilling menu items from scratch. For more information, visit www.deltaco.com.

19.     On January 4, 2022, Defendants caused to be filed with the SEC a Schedule 14A

Preliminary Proxy Statement (the "Proxy Statement") under the Exchange Act in connection with

the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Proxy Statement, which recommends that Del Taco shareholders vote in favor

of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Del

Taco's financial projections; (ii) the financial analyses performed by Del Taco's financial advisor,

Piper Sandler & Co. ("Piper Sandler"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Piper Sandler; and (iv) the sales process leading up to the Proposed Transaction.

21.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Del Taco Board of Directors and Reasons for the Merger; (ii) Opinion of Del Taco's Financial Advisor; (iii) Prospective Financial Information; and (iv) Background of the Merger.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Del Taco shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.     Material Omissions Concerning Del Taco's Financial Projections**

23.     The Proxy Statement omits material information concerning Del Taco's financial projections.

24.     With respect to Del Taco's FY 2021E to FY 2026E financial projections and Updated FY 2021E to FY 2026 financial projections (collectively, the "Company Projections"), the Proxy Statement fails to disclose: (1) all line items underlying (i) Total Revenue, and (ii) Adjusted Restaurant Operating Expenses; and (2) a reconciliation of all non-GAAP to GAAP metrics.

25.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to

replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.     Material Omissions Concerning Piper Sandler's Analyses

27.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Piper Sandler.

28.     With respect to  Piper Sandler's "*Discounted Cash Flow Analysis*," the Proxy Statement fails to disclose the unlevered free cash flows (including underlying line items) expected to be generated by Del Taco from FY 2022 to FY 2026. This material information must be disclosed in this cash-out merger because, *inter alia*, the cash flows were calculated based on the "Company Projections provided by Company management" and Piper Sandler's review of "certain information furnished to Piper [Sandler] by Company management relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company[.]" The Proxy Statement also fails to disclose the terminal values and all line items underlying the EBITDA exit multiples and discount rates.

29.     With respect to Piper Sandler's "*Selected Public Companies Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each company observed in the analysis.

30.     With respect to Piper Sandler's "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual financial metrics, closing dates, and transaction

value of each transaction observed in the analysis.

31.     With respect to Piper Sandler's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose the transactions observed and the premiums paid therein.

32.     The valuation methods, underlying assumptions, and key inputs used by Piper Sandler in rendering its purported fairness opinion must be fairly disclosed to Del Taco shareholders. The description of Piper Sandler's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

33.     Without the information described above, Del Taco shareholders are unable to fully understand Piper Sandler's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.     Material Omissions Concerning Potential Conflicts of Interest Involving Piper Sandler

34.     The Proxy Statement omits material information concerning potential conflicts of interest involving Piper Sandler.

35.     The Proxy Statement fails to adequately disclose the timing and nature of the past services Piper Sandler and/or its affiliates provided Del Taco, Jack in the Box, and/or their affiliates, including the amount of compensation Piper Sandler received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

36.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight

to place on that analysis.

37.     The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

### 4. Material Omissions Regarding the Sales Process Leading Up to the Proposed Transaction

38.     The Proxy Statement omits material information concerning the sales process

leading up to the Proposed Transaction.

39.     The Proxy Statement provides that, in 2021, Del Taco and various parties entered

into confidentiality agreements that contained standstill provisions. The Proxy Statement,

however, fails to disclose the relevant terms of such agreements, including whether such

agreements contained "don't ask, don't waive" (DADW) provisions (including their time of

enforcement) that would preclude such interested parties from making superior offers for the

Company.

40.     Without this information, Del Taco shareholders may have the mistaken belief

that potential suitors are or were permitted to submit superior proposals for the Company, when in

fact they are or were contractually prohibited from doing so. This information is material because

a reasonable Del Taco shareholder would want to know, prior to voting for or against the

Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a

superior proposal.

41.     The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully

11

set forth herein.

43.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

45.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

46.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

49.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

<strong><u>PRAYER FOR RELIEF</u></strong>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

14

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: January 13, 2022                              Respectfully submitted,

                                                     **HALPER SADEH LLP**

                                                     /s/ Daniel Sadeh
                                                     Daniel Sadeh, Esq.
                                                     Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                     667 Madison Avenue, 5th Floor
                                                     New York, NY 10065
                                                     Telephone: (212) 763-0060
                                                     Facsimile: (646) 776-2600
                                                     Email: sadeh@halpersadeh.com
                                                             zhalper@halpersadeh.com

                                                     *Counsel for Plaintiff*